483 S.E.2d 810

**LAWYER DISCIPLINARY BOARD, Complainant,**

**v.**

**Charles H. HATCHER, Jr., a Member of the West Virginia State Bar, Respondent.**

**No. 22429.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1997.

Decided Feb. 21, 1997.

---

Sherri D. Goodman, Chief Lawyer Disciplinary Counsel, Charleston, for Complainant.

James D. McQueen, Jr., Kathlene Harmon–McQueen, McQueen, Harmon, Potter & Cleek, L.C., Charleston, Forest J. Bowman, Morgantown, for Respondent.

McHUGH, Justice:

This case is before this Court upon a review of the August 9, 1996, recommended decision of the Hearing Panel Subcommittee of the Lawyer Disciplinary Board of the West Virginia State Bar concerning the respondent, Charles M. Hatcher, Jr., an assistant prosecuting attorney in Cabell County, West Virginia. The respondent was charged, *inter alia,* with a knowing failure to timely disclose exculpatory evidence to defense counsel during an underlying criminal prosecution. According to the Hearing Panel Subcommittee and the Office of Disciplinary Counsel, the charge has been substantiated and constitutes an ethics violation warranting sanctions. The respondent asserts that no ethics violations occurred.

This Court has before it the recommended decision, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court concludes that none of the charges brought against the respondent were established by clear and convincing evidence. Consequently, we direct that the charges be dismissed.

## I

The underlying case is *State v. Glen Dale Woodall,* No. 87–F–46 (Cabell County). In March 1987, Woodall was arrested and charged with various criminal acts, including the kidnapping and first degree sexual assault of two women abducted at the Huntington Mall near Barboursville, West Virginia. A detailed account of the incidents alleged to have been committed by Woodall appears in *State v. Woodall,* 182 W.Va. 15, 385 S.E.2d 253 (1989). Attorneys James Spurlock, Jay Lazelle and Carl Rhodes were appointed as defense counsel, and a trial was conducted in late June and early July 1987. A major issue during the trial was the identity of the assailant, and Woodall asserted the defense of alibi. Nevertheless, Woodall was convicted upon all charges and was sentenced upon the kidnappings to two life terms without the possibility of parole, plus a term of years with regard to the other crimes.

Subsequently, however, a DNA test excluded Woodall as the perpetrator of the

crimes, and Woodall, seeking relief in habeas corpus, was awarded a new trial. Ultimately, in 1992, the charges were dismissed. Woodall spent four years and four months in incarceration and another ten months upon home confinement prior to his release from prosecution.

## II

The respondent, as assistant prosecuting attorney for Cabell County, had primary responsibility for the prosecution of Woodall with regard to the 1987 trial. During various proceedings thereafter, Woodall's new counsel, Lonnie Simmons, concluded that certain exculpatory matters had not been provided to Woodall before or during the 1987 trial. An ethics complaint was thus filed against the respondent.

On July 5, 1994, the Investigative Panel of the West Virginia State Bar filed a statement of formal charges alleging that the respondent had violated the rules of ethics in failing to disclose various matters to Woodall's counsel with regard to the 1987 trial. Specifically, the statement of charges alleged (1) a failure to disclose two criminal complaint forms containing descriptions by the victims of their assailant's dress and appearance, (2) a failure to disclose tape recordings or transcripts of hypnosis sessions of the two victims, (3) a failure to disclose a hair analysis report from the West Virginia State Police Crime Lab and (4) a failure to disclose a tape recording or a transcript of a joint conversation between the two victims.

According to the Investigative Panel, in failing to make the above disclosures, the respondent violated the following disciplinary rules of the West Virginia Code of Professional Responsibility: (1) DR 1–102(A)(5), which provides that a lawyer shall not engage in conduct "that is prejudicial to the administration of justice," (2) DR 7–102(A)(3), which provides that a lawyer shall not conceal or knowingly fail to disclose "that which he is required by law to reveal" and (3)

DR 7–103(B), which provides that a public prosecutor or other government lawyer in criminal litigation

shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment.[1]

(footnote added).

In addition, the Investigative Panel's statement of charges asserted that the respondent intentionally misrepresented facts during certain post-trial proceedings. According to the Investigative Panel, such misrepresentation constituted a breach of Rule 8.4(d) of the West Virginia Rules of Professional Conduct, the current rules which superseded the Code of Professional Responsibility. *See* n. 1, *supra*. According to Rule 8.4(d), it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice [.]"

The statement of formal charges was brought before the Hearing Panel Subcommittee of the Lawyer Disciplinary Board for an evidentiary hearing. Two such hearings were conducted in February and April 1995. Thereafter, on August 9, 1996, the Hearing Panel Subcommittee filed its recommended decision with this Court. Specifically, the Hearing Panel Subcommittee found a lack of evidence with regard to three of the charges, i.e., the failure to disclose the criminal complaint forms, the failure to disclose the hair analysis report and the alleged misrepresentation of facts. However, the Hearing Panel Subcommittee found that clear and convincing evidence had been established that the respondent had knowingly failed to disclose tape recordings or transcripts of the hypnosis sessions of the two victims and had knowingly failed to disclose a tape recording or a transcript of a joint conversation between the two victims.

---

1. It should be noted that the above-described charges were filed by the Investigative Panel under the West Virginia Code of Professional Responsibility because the allegations forming the basis of those charges occurred prior to Woodall's first trial in 1987. In 1988, however, the West Virginia Code of Professional Responsibility was superseded by the West Virginia Rules of Professional Conduct.

With regard to the hypnosis sessions, the Hearing Panel Subcommittee found:

> Disciplinary Counsel alleged that the respondent knew that the two victims had been hypnotized prior to trial and that these hypnotic sessions were tape recorded and that neither the fact of the hypnosis nor the tape recordings were ever disclosed to the defense or the Court.... The respondent testified that defense counsel was made aware of the victims' hypnosis, but defense counsel testified that they did not believe they were made aware of this fact, but that their memories could not be 100% certain because of the passage of time. However, there was nothing presented by the respondent from the court record below that indicated that such a disclosure had been made to the defendant. There was conflicting testimony presented as to whether the defendant's counsel knew of the victims' hypnotism. However, the Subcommittee finds most persuasive the testimony that neither the defendant, nor his counsel, were aware of the hypnotism or ever received copies of the tapes or transcripts.

Moreover, with regard to the joint conversation between the two victims, the Hearing Panel Subcommittee found:

> Another item of evidence which was alleged not to have been disclosed to defendant's counsel was a joint statement of the two victims which was tape recorded at the State Police Barracks in Huntington while the two victims exchanged information about their assaults.... There was nothing presented to the subcommittee from the court file below which indicated that either the tape recording or the transcript of the tape recording of this joint statement was ever provided to defense counsel.... The respondent's position is that he was never made aware of the joint statement of the victims and therefore could not disclose it because he did not

know it existed.... [T]he Subcommittee would be inclined to find that Disciplinary Counsel failed to prove by clear and convincing evidence that the respondent was aware of this joint statement, but when viewed in the totality of all the circumstantial evidence produced at the hearing, a strong inference is indicated that the respondent was aware of this joint statement.

Concluding that the respondent's conduct concerning the hypnotic sessions and the joint conversations violated disciplinary rules DR 1–102(A)(5), DR 7–102(A)(3) and DR 7–103(B), the Hearing Panel Subcommittee recommends to this Court that the respondent be publicly reprimanded, that he be required to donate 200 hours of service to the West Virginia·State Prosecuting Attorneys Association and that the respondent be assessed the costs of this proceeding. The respondent filed an objection to the Subcommittee's recommendation, and this review followed.[2]

### III

This Court has previously made clear that in conducting the evidentiary hearing and making a recommendation to this Court, the Lawyer Disciplinary Board of the West Virginia State Bar, through its Disciplinary Counsel and Hearing Panel Subcommittee, is functioning, as did the former Committee on Legal Ethics, "as an administrative arm of this Court." *Lawyer Disciplinary Board v. Vieweg*, 194 W.Va. 554, 558, 461 S.E.2d 60, 64 (1995). *See also Lawyer Disciplinary Board v. Frame*, 198 W. Va. 166, 479 S.E.2d 676 (1996). In particular, as we reaffirmed in *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 288, 452 S.E.2d 377, 379 (1994), the authority of the Supreme Court of Appeals to regulate and control the practice of law in West Virginia, including the lawyer disciplinary process, is constitutional in ori-

---

**2.** The Office of Disciplinary Counsel indicates that it advocates the correctness of the Hearing Panel Subcommittee's recommended decision, including the recommendation that all but two of the charges be dismissed. In particular, the Office of Disciplinary Counsel initially objected to that part of the recommended decision requiring that the respondent donate 200 hours of service to the West Virginia State Prosecuting Attorneys Association. Instead, the Office of Disciplinary Counsel sought temporary suspension of the respondent's license to practice law. However, Disciplinary Counsel's objection to the recommended decision has been withdrawn. *See*, syl. pt. 5, *Lawyer Disciplinary Board v. Vieweg*, 194 W.Va. 554, 461 S.E.2d 60 (1995).

gin. *W. Va. Const.* art. VIII, § 3; syl. pt. 1, *Daily Gazette v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984). *See also* syl. pt. 1, *Committee on Legal Ethics v. Craig,* 187 W.Va. 14, 415 S.E.2d 255 (1992).

Accordingly, the standard of review by this Court with regard to the lawyer disciplinary process is the same when reviewing a recommendation of the Lawyer Disciplinary Board, through its Hearing Panel Subcommittee, as it was with regard to the former Committee on Legal Ethics. As syllabus point 3 of *McCorkle, supra,* states:

> A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*See also* syl. pt. 1, *Lawyer Disciplinary Board v. Allen,* 198 W.Va. 18, 479 S.E.2d 317 (1996).

Importantly, as stated in Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, in order to recommend to this Court the imposition of discipline of any lawyer, the allegations of the statement of formal charges must be "proved by clear and convincing evidence." *See* syl. pt. 1, *Lawyer Disciplinary Board v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995).

## IV

In the context of criminal trials, it is without question that it is a constitutional violation of a defendant's right to a fair trial for a prosecutor to withhold or suppress exculpatory evidence. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As this Court held in syllabus point 4 of *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982): "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." *See also* syl. pt. 3, *State v. Franklin,* 191 W.Va. 727, 448 S.E.2d 158 (1994); syl. pt. 4, *State v. Fortner,* 182 W.Va. 345, 387 S.E.2d 812 (1989). That principle is, of course, consistent with the State's obligation in a criminal proceeding to disclose evidence pursuant to *W. Va. R.Crim. P.* 16, concerning discovery and inspection, and *W. Va. R.Crim. P.* 26.2, concerning the production of statements of witnesses.[3] Moreover, it should be noted that the existence of an "open file policy," which we note was the policy in the underlying *Woodall* case, is not enough, of itself, to excuse a prosecutor's failure to disclose exculpatory evidence. *State v. Hall,* 174 W.Va. 787, 329 S.E.2d 860 (1985). As the *Hall* opinion states: "It is not enough for the

---

**3.** In fact, the requirement of disclosure under those Rules is not limited solely to exculpatory matters. As *W. Va. R.Crim. P.* 16(a)(1)(C) and *W. Va. R.Crim. P.* 16(a)(1)(F) state:

> (C) Documents and tangible objects.—Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody and control of the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant.
>
> . . . .
>
> (F) State witnesses.—Upon request of the defendant, the state shall furnish to the defendant a written list of names and addresses of all state witnesses whom the attorney for the state intends to call in the presentation of the case in chief, together with any record of prior convictions of any such witnesses which is within the knowledge of the state.

Moreover, as stated in *W. Va. R.Crim. P.* 26.2(a):

> (a) Motion for production.—After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

prosecution to simply say that he provided the defense all evidence he chose to put in the file." 174 W.Va. at 791, 329 S.E.2d at 863. *See also State v. Ward,* 188 W.Va. 380, 390 n. 19, 424 S.E.2d 725, 735 n. 19 (1991).

With those principles in mind, it must nevertheless be emphasized that, in this ethics proceeding, we are not directly concerned with whether reversible error occurred in the underlying case. Not every transgression of law and procedure by the State in a criminal case warrants an ethics proceeding. Rather, this Court is concerned with whether the respondent knowingly failed to timely disclose exculpatory evidence to defense counsel and, if so, whether that failure constitutes a violation of the West Virginia Code of Professional Responsibility.

Unfortunately, as the parties acknowledge, the files of the State and defense counsel, with regard to the 1987 *Woodall* trial, have not been preserved in a manner helpful to review in this proceeding. To be sure, defense counsel, in 1987, made a request for exculpatory evidence, and, in reply, various items of information were disclosed by the respondent. However, the crimes perpetrated against the two victims generated a great volume of documents and other matters, particularly with regard to the investigation by State law enforcement officers. Approximately nine years have now passed since the *Woodall* trial, including a lengthy habeas corpus proceeding conducted in the interim.

In particular, the testimony before the Hearing Panel Subcommittee suggested that information from investigating law enforcement officers may have found its way into the State's file after the underlying *Woodall* trial. Moreover, the file of defense counsel Jay Lazelle concerning the *Woodall* trial was lost or destroyed prior to the hearings before the Hearing Panel Subcommittee. Accordingly, the difficulty in reconstructing the files, as they were in 1987, coupled with the acknowledged, fading memories of some of the witnesses before the Hearing Panel Subcommittee, renders any review of the respondent's actions problematic. In fact, the Office of Disciplinary Counsel states in its brief that the Hearing Panel Subcommittee "by

necessity was forced to look at events which occurred many years ago."

Prior to the *Woodall* trial, the two victims were separately placed under hypnosis in an attempt to obtain further information about the respective crimes. The hypnosis sessions were held at the behest of the State and conducted by Dr. Warren G. Lutz of Marshall University, located in Huntington, West Virginia. According to Disciplinary Counsel, the tape recordings and transcripts of those sessions contained descriptions of the assailant's appearance which were inconsistent with the subsequent identification of Woodall as the perpetrator, and the respondent should have disclosed the tape recordings or the transcripts to defense counsel prior to trial. The respondent, however, states that defense counsel were fully aware of the hypnosis sessions of the victims. Moreover, the respondent states that defense counsel had placed Woodall under hypnosis as well, and the respondent and defense counsel had agreed not to interject references to hypnosis into the trial.

The testimony of defense counsel James Spurlock and Jay Lazelle before the Hearing Panel Subcommittee, regarding the hypnosis sessions, was equivocal. Both Spurlock and Lazelle testified that the respondent never informed them before or during the *Woodall* trial that the victims had been hypnotized. Nevertheless, during the latter portion of their testimony, both Spurlock and Lazelle admitted that they may have, in fact, known that the victims had been hypnotized. Defense counsel Carl Rhodes did not testify.

On the other hand, the testimony of Dr. Lutz was more definite. According to Dr. Lutz, he told Lazelle that he had hypnotized the two victims and that, therefore, he ought not be the doctor to also hypnotize Woodall. As Dr. Lutz told the Hearing Panel Subcommittee: "Jay [Lazelle] called me at my office asking if I would be available to work with Glenn Woodall with hypnosis and I indicated to him that I would have difficulty with that since I had worked with the two victims with hypnosis up to this point [.]" Dr. Lutz further indicated that he later met with Lazelle. Ultimately, Dr. Lutz conducted the hypnosis of Woodall.

■ Of course, in this ethics proceeding, we need not definitively or preemptively settle the question of the hypnosis of witnesses in criminal cases. That question is not before this Court and should, more appropriately, be discussed in a case arising in the criminal context. Here, however, the Hearing Panel Subcommittee specifically observed that, although Spurlock and Lazelle indicated that they were not informed prior to or during the *Woodall* trial that the victims had been hypnotized, "their memories could not be 100% certain because of the passage of time." Moreover, the testimony of Dr. Lutz, that he informed Lazelle about the hypnosis, was not addressed by the Hearing Panel Subcommittee. The testimony of Dr. Lutz, especially in view of the uncertainty of Spurlock and Lazelle, substantially supported the assertion of the respondent that defense counsel were fully aware of the hypnosis sessions of the victims. Consequently, this Court is of the opinion that the charge, that the respondent knowingly failed to disclose tape recordings or transcripts of the hypnosis sessions of the two victims, was not established by clear and convincing evidence.

With regard to the remaining charge, the evidence before the hearing panel subcommittee indicated that during the 1987 police investigation, the two victims were placed in a room by Trooper B.R. Lester of the West Virginia State Police so that the victims could discuss the case with each other and, hopefully, uncover further information about the crimes. The joint conversation between the victims was tape recorded. According to Disciplinary Counsel, that conversation, as did the hypnosis sessions, contained descriptions of the assailant's appearance which were inconsistent with the subsequent identification of Woodall as the perpetrator, and the respondent should have disclosed the tape recording, or a transcript thereof, to defense counsel prior to trial. The respondent indicates, however, that, given the massive police investigation surrounding the two

crimes, he was unaware that a joint conversation had occurred.

During the hearings before the Hearing Panel Subcommittee, Spurlock and Lazelle testified that they were not provided with the joint conversation prior to or during the *Woodall* trial. Trooper Lester, however, testified that he could not state, with certainty, whether he had informed the respondent about the conversation. Noting that Trooper Lester had previously stated otherwise, the Hearing Panel Subcommittee concluded that, in the "totality of all the circumstantial evidence," the respondent was aware of the joint conversation and knowingly failed to disclose it.[4] As the recommended decision explains:

> Standing alone the Subcommittee would be inclined to find that Disciplinary Counsel failed to prove by clear and convincing evidence that the respondent was aware of this joint statement, but when viewed in the totality of all the circumstantial evidence produced at the hearing, a strong inference is indicated that the respondent was aware of this joint statement.

■ As stated above, in order to recommend to this Court the imposition of discipline of any lawyer, the allegations of the statement of formal charges must be "proved by clear and convincing evidence." Here, the record fails to clearly demonstrate that the joint conversation was a part of the respondent's file during the *Woodall* trial or that the respondent was aware that the conversation had occurred. Nor does the record demonstrate that the respondent deliberately kept himself ignorant of the conversation in order to avoid disclosure. Consequently, the charge that the respondent knowingly failed to disclose a tape recording or a transcript of the joint conversation between the two victims has not been established by clear and convincing evidence.

This Court indicated above that the charges concerning the hypnosis sessions and

---

4. As the recommended decision of the Hearing Panel Subcommittee states:

[Trooper Lester] also stated in a sworn statement to the Disciplinary Counsel that the respondent was given this information before trial. However, in an affidavit prepared by

respondent's counsel in January, 1995, Sgt. Lester recanted his prior statements, including his sworn statement to Disciplinary Counsel, and indicated that he now did not believe that the respondent was given either the tape or the transcript of the victim's joint statement.

the joint conversation were brought against the respondent under the disciplinary rules of the West Virginia Code of Professional Responsibility. Those rules were later superseded by the West Virginia Rules of Professional Conduct. *See* n. 1, *supra*. Rule 3.8 of the Rules of Professional Conduct concerns the "special responsibilities of a prosecutor." In particular, as Rule 3.8(d) provides:

> The prosecutor in a criminal case shall:
>
> . . . .
>
> (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal [.]

The Comment to Rule 3.8 states: "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." That Comment is consistent with our recognition in *State v. Britton*, 157 W.Va. 711, 716, 203 S.E.2d 462, 466 (1974), that the duty of a prosecutor is to "seek justice, not merely to convict."

A prosecutor, as an attorney licensed to practice law, is subject to the rules of ethics of his or her jurisdiction, as are other attorneys within that jurisdiction. However, cases specifically discussing the actions of prosecutors in the context of matters of ethics are few in number. *United States v. Kelly*, 550 F.Supp. 901 (D.Mass.1982), no finding that assistant United States attorney intentionally violated his legal and ethical responsibilities; *People v. Garcia*, 22 Cal. Rptr.2d 545, 550, 17 Cal.App.4th 1169 (1993), after a conviction, a prosecutor is bound by "the ethics of his office" to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction; *Cuyahoga County Bar Association v. Gerstenslager*, 45 Ohio St.3d 88, 543 N.E.2d 491 (1989), public reprimand warranted for failure to timely disclose evidence tending to negate the guilt of the accused. *See also* R. P. Eclavea, Annotation, *Disciplinary Action Against Attorney for Misconduct related to Performance of Official Duties as Prosecuting Attorney*, 10 A.L.R.4th 605 (1981).

■ Many years ago, this Court set forth the admonition that the conduct of a prosecutor is related to the character traits expected of attorneys by the public. As this Court stated in syllabus point 1 of *State v. Hays*, 64 W.Va. 45, 61 S.E. 355 (1908): "Gross infidelity by a prosecuting attorney to his trust and duty as such officer, being connected with his character as an attorney, is misconduct for which his name may be stricken, by summary process, from the roll of attorneys entitled to practice in a court." The principle thus expressed in *Hays*, concerning the duty of a prosecutor to act ethically, is largely restated in the West Virginia Rules of Professional Conduct and particularly in Rule 3.8 thereof, as quoted above. Consequently, in the view of this Court, the applicability of rules of ethics to the actions of prosecutors is a clear and long-standing tenet of jurisprudence in West Virginia.

■ Accordingly, this Court holds that a prosecutor in West Virginia, as an attorney licensed to practice law in this State, is subject to the rules of ethics currently set forth in the West Virginia Rules of Professional Conduct. Concomitant with the duty of a prosecutor to seek justice, rather than merely to convict, is a duty to disclose evidence which is known to the prosecutor tending to exculpate the accused in a criminal proceeding. In addition to the risk of bringing reversible error to the criminal proceeding, a prosecutor, who knowingly fails to make a timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, also runs the risk of violating the West Virginia Rules of Professional Conduct, particularly Rule 3.8, concerning the special responsibilities of a prosecutor.

For the reasons stated above, none of the charges brought against the respondent in this proceeding were established by clear and convincing evidence. Consequently, this Court declines to adopt the August 9, 1996, recommended decision of the Hearing Panel Subcommittee, and we direct that the complaint be dismissed.

Complaint Dismissed.