488 S.E.2d 460

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Michael C. FARBER, a Member of the West Virginia State Bar, Respondent.**

**No. 23344.**

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1997.

Decided June 2, 1997.

Rehearing Refused July 15, 1997.

Sherri D. Goodman, Chief Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, for Complainant.

Michael C. Farber, Sutton, Pro se.

PER CURIAM:

This case is before this Court upon a review of the October 17, 1996, findings and recommendation of the Hearing Panel Subcommittee of the Lawyer Disciplinary Board of the West Virginia State Bar concerning the respondent, Michael C. Farber, an attorney practicing in Sutton, West Virginia. The respondent was charged, *inter alia*, with revealing confidential information concerning a client and with threatening that client, in violation of the *West Virginia Rules of Professional Conduct*. According to the Hearing Panel Subcommittee and the Office of Disciplinary Counsel, the charges were substantiated, and sanctions are warranted. The respondent, however, contends that no ethics violations occurred.

This Court has before it the findings and recommendation, all matters of record and the briefs and argument of counsel. For the reasons expressed below, this Court is of the opinion that the above charges were established by clear and convincing evidence. Moreover, although the Hearing Panel Subcommittee recommends that the respondent's license to practice law in West Virginia be suspended for one year, this Court concludes that, under the circumstances of this case, a four-month suspension, supervised practice and the payment of costs are more appropriate.

I

Regrettably, the respondent has had previous problems concerning professional ethics. In *Committee on Legal Ethics v. Farber*, 185 W.Va. 522, 408 S.E.2d 274 (1991), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992), this Court upheld the findings of the Disciplinary Committee that the respondent had (1) misrepresented facts in order to lend support to accusations of wrongdoing, (2) falsely accused a circuit judge of criminal conduct and (3) engaged in a pattern and practice of contemptuous and disruptive behavior revealing a "tendency to lash out with irrational and reckless accusations[.]" 185 W. Va. at 534, 408 S.E.2d at 286. In that case, this Court ordered that the respondent's license be suspended for three months and that, upon return, his practice be supervised by another attorney. We further ordered, in *Farber*, that the respondent pay the costs of the proceeding. Thereafter, in *Committee on Legal Ethics v. Farber*, 191 W.Va. 667, 447 S.E.2d 602 (1994), this Court, noting that the respondent had not properly complied with the supervised practice requirement and had not paid the costs previously awarded, continued the suspension of the respondent's license, until such time as supervision and reimbursement agreements were reached with the State Bar. Soon after, the respondent's license to practice law was reinstated with the understanding that his practice would be supervised until March 1, 1996, by George M. Cooper, also of Sutton, West Virginia.

The facts giving rise to this case occurred during the respondent's period of supervision. On September 26, 1995, G. Ernest Skaggs, an attorney, appeared in the Circuit Court of Greenbrier County, West Virginia, and entered a plea of nolo contendere to the charge of obstructing an officer. The charge arose from an incident in January, 1994 between Skaggs and two law enforcement officers. Pursuant to *W.Va.Code*, 61–5–17 [1931], the offense of obstructing an officer, a misdemeanor, carried with it a fine of not less than $50 nor more than $500 and possible imprisonment not exceeding one year. During the plea hearing, Skaggs was represented by the respondent, and, as the transcript of that hearing indicates, the circuit court determined that the plea was voluntary and without any promise concerning punishment. *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975). Skaggs' sentencing was scheduled for November 3, 1995.

Shortly thereafter, Skaggs wrote a letter to the respondent dated October 8, 1995, in which he suggested that the respondent had misled him with regard to the sentence to be imposed. According to the letter, the respondent told Skaggs, before the nolo contendere plea was taken, that the circuit judge had agreed to impose no punishment for the offense beyond a $50 fine, but that, following the plea, the respondent suggested to Skaggs that he could not promise what the punishment would be. Skaggs indicated in the letter that he intended to file a motion to set the plea aside.

Upon receipt of the October 8, 1995, letter, the respondent immediately telephoned Skaggs concerning the problem. Although the record does not reveal the substance of the conversation between the two, Skaggs hung up the telephone twice on the respondent. On October 13, 1995, Skaggs filed a *pro se* motion to set the plea aside.

On October 17, 1995, the respondent filed a motion to withdraw as Skaggs' counsel. As indicated to the Hearing Panel Subcommittee and to this Court, the respondent based the motion to withdraw upon the contention that Skaggs had either testified falsely at the plea hearing (during which Skaggs had indicated that no promises had been made to him as to

the punishment for the offense) or intended to testify falsely upon the motion to set the plea aside (in contradiction to the plea hearing). Upon the latter point, the respondent has asserted that it would be "a fraudulent act by Mr. Skaggs to attempt to set aside his plea."

Nevertheless, the respondent's motion to withdraw went beyond setting forth allegations supportive of the above contention and denying that the respondent had indicated that the circuit judge had agreed to a $50 fine. An affidavit attached to the motion indicated that Skaggs had engaged in "a flat-out-lie" and that "Skaggs had expressed the view that he thought he would have been convicted of battery had the issue been presented to the jury." It appears certain that Skaggs' statement concerning battery, as described by the respondent, was made to the respondent during the course of the attorney-client relationship. Moreover, the motion to withdraw containing Skaggs' statement was filed by the respondent prior to the final disposition of Skaggs' case.

Shortly after the filing of the motion to withdraw as counsel, the respondent sent a letter to Skaggs dated October 25, 1995. As that letter stated in part: "What you are doing here is so disgusting to me personally and professionally, I'm going to do every-

thing in my power to even the score with you."

In November, 1995, the circuit court conducted a hearing in Skaggs' case concerning the charge of obstructing an officer. Although the record herein does not reveal the sentence ultimately imposed, the circuit court, during the hearing, denied Skaggs' motion to set the plea of nolo contendere aside. The circuit court, however, granted the respondent's motion to withdraw as counsel. The granting of the motion to withdraw was reflected in an order entered by the circuit court on November 27, 1995.

On March 8, 1996, the Investigative Panel of the Lawyer Disciplinary Board filed a statement of formal charges alleging, *inter alia*, that the respondent had violated the *West Virginia Rules of Professional Conduct*, (1) by revealing confidential information concerning Mr. Skaggs in the motion to withdraw and (2) by threatening Mr. Skaggs in the letter of October 25, 1995.[1] In particular, the statement of formal charges alleged that the respondent's conduct violated Rule 1.6(a), which states that a lawyer shall not "reveal information relating to representation of a client unless the client consents after consultation," Rule 1.8(b), which states that a lawyer shall not "use information relating to representation of a client to the disadvantage of the client unless the client

---

1. It should be noted that, in addition, the statement of formal charges alleged that the respondent failed to return Skaggs' file to him, as requested, following the termination of the attorney-client relationship in October 1995. *See Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 29, 449 S.E.2d 277, 283 (1994), recognizing that the failure to turn over a requested client file may warrant sanctions. In fact, the Office of Disciplinary Counsel intervened upon Skaggs' behalf and directed the respondent to return the file. The respondent returned the file to Skaggs on December 12, 1995.

According to the statement of formal charges, the respondent's failure or delay in returning the file violated Rule 1.16(d) of the *West Virginia Rules of Professional Conduct*, which states that upon termination of representation, "a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled[.]" Moreover, the statement of formal charges alleged that the respondent's actions concerning the file violated Rule 8.1(b),

which states that a lawyer, in connection with a disciplinary matter, shall not "knowingly fail to respond ... to disciplinary authority."

Nevertheless, combining the alleged violations for purposes of discussion, although the Hearing Panel Subcommittee found that the respondent transgressed Rules 1.16(d) and 8.1(b), this Court is of the opinion that the charges relating to Skaggs' file were not proven under the "clear and convincing" standard applicable to legal ethics cases. Specifically, while it is true that Skaggs requested the file from the respondent in late October, 1995, the order of the circuit court granting the respondent's motion to withdraw as Skaggs' counsel was not entered until November 27, 1995, relatively close in time to the actual return of the file on December 12, 1995. Thus, although the attorney-client relationship had, as a practical matter, ended in October, 1995, the respondent's concern about returning the file before he had been relieved as attorney of record for Skaggs is not without justification. Moreover, there is no evidence herein indicating that the respondent in any way delayed the entry of the order allowing his withdrawal.

consents after consultation," Rule 1.9(b), which states that a lawyer "who has formerly represented a client in a matter shall not thereafter ... use information relating to the representation to the disadvantage of the former client," and Rule 8.4(d), which states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

An evidentiary hearing was conducted by the Hearing Panel Subcommittee in June, 1996. At the hearing, Disciplinary Counsel relied, primarily, upon the motion to withdraw as counsel and the letter of October 25, 1995, to establish the charges against the respondent. The respondent testified upon his own behalf. Mr. Skaggs, however, did not testify.

Thereafter, on October 17, 1996, the Hearing Panel Subcommittee filed its findings and recommendation with this Court. Concluding that the charges had been proven by clear and convincing evidence, the Hearing Panel Subcommittee indicated that, by stating in the motion to withdraw that Skaggs had "expressed the view that he thought he would have been convicted of battery had the issue been presented to the jury," the respondent revealed confidential information concerning a client in violation of the *West Virginia Rules of Professional Conduct.* Moreover, the Hearing Panel Subcommittee indicated that the respondent's letter of October 25, 1995, constituted a threatening correspondence which, as the respondent admitted to the Subcommittee, was improper and, in addition, constituted a reckless remark of the type for which the respondent had been disciplined in the past.

Thus, the Hearing Panel Subcommittee recommends that the respondent's license to practice law be suspended for one year. Following the filing of the respondent's objection to the recommendation, this case was submitted to this Court for review.

## II

■ As this Court has previously stated, in conducting the evidentiary hearing and making a recommendation to this Court, the Lawyer Disciplinary Board of the West Virginia State Bar, through its Disciplinary Counsel and Hearing Panel Subcommittee, is functioning, as did the former Committee on Legal Ethics, "as an administrative arm of this Court." *Lawyer Disciplinary Board v. Vieweg,* 194 W.Va. 554, 558, 461 S.E.2d 60, 64 (1995). *See also Lawyer Disciplinary Board v. Frame,* 198 W.Va. 166, 479 S.E.2d 676 (1996). Specifically, as this Court confirmed in *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 288, 452 S.E.2d 377, 379 (1994), the authority of the Supreme Court of Appeals to regulate and control the practice of law in West Virginia, including the lawyer disciplinary process, is constitutional in origin. *W. Va. Const.* art. VIII, § 3; syl. pt. 1, *Daily Gazette v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984). *See also* syl. pt. 1, *Committee on Legal Ethics v. Craig,* 187 W.Va. 14, 415 S.E.2d 255 (1992).

■ Therefore, the standard of review by this Court with regard to the lawyer disciplinary process is the same when reviewing a recommendation of the Lawyer Disciplinary Board, through its Hearing Panel Subcommittee, as it was with regard to the former Committee on Legal Ethics. As syllabus point 3 of *McCorkle, supra,* states:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*See also* syl. pt. 1, *Lawyer Disciplinary Board v. Hatcher,* 199 W.Va. 227, 483 S.E.2d 810 (1997).

■ Significantly, as stated in Rule 3.7 of the *Rules of Lawyer Disciplinary Procedure,* in order to recommend to this Court the imposition of discipline of any lawyer, the allegations of the statement of formal charges must be "proved by clear and con-

vincing evidence." *See* syl. pt. 1, *Lawyer Disciplinary Board v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995).

### III

As stated above, the Hearing Panel Subcommittee found that the respondent violated the *West Virginia Rules of Professional Conduct* (1) by revealing confidential information concerning Mr. Skaggs in the motion to withdraw as counsel and (2) by threatening Mr. Skaggs in the letter of October 25, 1995. In response, the respondent contends that both the motion and the letter should be viewed in the context of what the respondent has characterized as Skaggs' fraudulent attempt to withdraw his plea to the offense of obstructing an officer. According to the respondent, he was merely reacting to a belief that Skaggs had either testified falsely during the plea hearing of September 26, 1995, or intended to testify falsely upon the motion to set the plea aside. Thus, the respondent places great emphasis upon Rule 1.16 of the *West Virginia Rules of Professional Conduct,* concerning a lawyer's duty to withdraw from representation where a client engages in improper conduct, and Rule 3.3 of those Rules, concerning a lawyer's duty to avoid the making of false statements to a legal tribunal. As Rule 1.16(b) states in part:

> [A] lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:
>
> (1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
>
> (2) the client has used the lawyer's services to perpetrate a crime or fraud;
>
> (3) the client insists upon pursuing an objective that the lawyer considers repugnant or imprudent[.]

█ The assertions of the respondent notwithstanding, the issue before the Hearing Panel Subcommittee, and now before this Court, is not whether the respondent had good reason under Rule 1.16 or Rule 3.3, or other authority, to withdraw as Skaggs' attorney. Inasmuch as the attorney-client relationship between the respondent and Skaggs clearly deteriorated in October, 1995, the respondent may, very well, have had legitimate grounds for the motion to withdraw. Nor does the issue involve the assertion of Skaggs that the respondent misled him with regard to the sentence to be imposed for obstructing an officer. Rather, the concern is with the respondent's method of withdrawing and whether his conduct, in so doing, violated the *West Virginia Rules of Professional Conduct.*

In this case, the respondent's motion to withdraw and subsequent letter went beyond the type of communication appropriate to the termination of an attorney-client relationship. In the experience of this Court gained in reviewing the many records in cases before us, we may safely say that motions to withdraw as counsel are ordinarily rather attenuated. Here, attached to the motion to withdraw was an affidavit in which Skaggs was accused of telling a lie and said to have stated that "he thought he would have been convicted of battery had the issue been presented to the jury." Manifestly, those statements were significant in view of the fact that Skaggs, at that time, was continuing to litigate his guilt or innocence upon the charge of obstructing an officer. Moreover, the respondent's conduct culminated with the letter of October 25, 1995, in which the respondent stated to Skaggs that "I'm going to do everything in my power to even the score with you."

As Disciplinary Counsel's brief before this Court properly observes: "[A] difficult client does not give an attorney license to turn on the client and engage in a vindictive campaign[.]" Here, the respondent acted out of anger, rather than professionally, toward Skaggs. Nor did the respondent seek the approval of his supervising attorney concerning his actions. As Disciplinary Counsel stated before the Hearing Panel Subcommittee:

> The motion to withdraw and the affidavit are really the substance of attorney-client conversations. They are couched in terms such as could cause harm to Mr. Skaggs' position in the pending case and they make negative comments about Mr. Skaggs. Some examples of these comments are Mr.

Skaggs has expressed the view that he thought he would have been convicted of battery had the issue been presented to the jury.

. . . .

We think that his letter of October 25, 1995, threatens that ... 'I'm going to do everything in my power to even the score with you,' is most telling of his motivation for his conduct.

Clearly, the statements of the respondent, at issue, in the motion to withdraw and in the letter of October 25, 1995, were inappropriate and unnecessary. The statements revealed confidential information, were potentially to the disadvantage of Skaggs and were threatening. Accordingly, under the standard of review set forth in *McCorkle, supra,* the determination of the Hearing Panel Subcommittee that the respondent violated the *West Virginia Rules of Professional Conduct* is entitled to be upheld. Thus, this Court confirms the findings of the Hearing Panel Subcommittee that the respondent's conduct violated Rule 1.6(a), Rule 1.8(b) and Rule 1.9(b), which Rules prohibit revealing confidential information concerning a client or using information relating to the representation of a client "to the disadvantage" of the client, and Rule 8.4(d), which states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." *See People v. Hunte,* 168 Misc.2d 466, 637 N.Y.S.2d 996 (N.Y.Sup.Ct. 1995), indicating that a witness' knowledge, in a state "RICO" proceeding, about jail time he faced if he did not cooperate with the government was ordinarily protected by the attorney-client privilege, where his knowledge came from discussions with his counsel; *In the Matter of Burns,* 657 N.E.2d 738 (Ind.1995), holding that a suspension was warranted for an attorney's threatening behavior; *In the Matter of Vincenti,* 114 N.J. 275, 554 A.2d 470 (1989), indicating that discipline should be imposed for an attorney's failure to act with common courtesy and civility.

With regard to the sanction to be imposed, syllabus point 3 of *Committee on*

*Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985), confirms that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." *See also* syl. pt. 3, *Lawyer Disciplinary Board v. Frame, supra.* Here, although the respondent's discipline by this Court in previous cases is a factor to be considered in the severity of the current sanction to be imposed, this Court is not unmindful of the fact that a series of heated exchanges occurred between the respondent and Skaggs, who is also an attorney, and that the respondent attempted to follow what he perceived to be a viable method of extricating himself from the attorney-client relationship. Therefore, while not condoning the respondent's actions in any way, this Court is of the opinion that a four-month suspension, rather than a one-year suspension, is warranted. Moreover, as in the past, we direct the West Virginia State Bar and the respondent to develop and execute a written agreement pursuant to which the respondent will practice law under supervision upon the termination of his suspension. The period of supervision shall be for a period of two years. In that regard, we respectfully note the death of George M. Cooper, the respondent's previous supervising attorney.[2] Finally, this Court directs the respondent to pay the costs of these proceedings.

Upon all of the above, this Court declines to adopt the recommended one-year suspension. Instead, this Court directs that the respondent shall be suspended for four months and, thereafter, shall practice under supervision for a period of two years. In addition, the respondent shall pay the costs of these proceedings.

Four–Month Suspension, Supervised Practice and Payment of Costs.

---

2. Although the recommendation of the Hearing Panel Subcommittee included a provision that the respondent be required to take and pass the Professional Responsibility Section of the Multi-

State Bar Examination, this Court is of the opinion that, under the circumstances herein, supervised practice is more appropriate.