**FILED**

**August 27, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 19-0502** (Harrison County 18-F-230-2)

**Michael Joseph Taber,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Michael Joseph Taber, by counsel Justin M. Collin, appeals his conviction by a jury of three counts of burglary and one count of forgery of a public document. The State of West Virginia, by counsel Mary Beth Niday, filed a response in support of the convictions. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in preventing him from eliciting certain testimony on cross-examination and that there was insufficient evidence presented to support one of his convictions for burglary.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 27, 2017, Laura Yokochi returned to her home in Salem, West Virginia, to find that glass and broken flowerpots were on the ground near her door. Upon closer examination, Ms. Yokochi realized that her home had been ransacked. The floor was covered with broken glass, pictures had been knocked off the walls, appliances were tipped over and broken, and a few items were missing, including some of Ms. Yokochi's journals. Ms. Yokochi called 9-1-1, and Lt. Jeffrey McAtee of the Salem Police Department responded to the home. Ms. Yokochi told Lt. McAtee that petitioner, her daughter's ex-boyfriend, was responsible for the damage as he had a history of "breaking things and destroying things." After Lt. McAtee documented the incident and left, Ms. Yokochi began to clean the home. Petitioner came out of hiding from within or near the home and claimed he had been there all day. Petitioner demanded pictures of his child, whom he shared with Ms. Yokochi's daughter; threw a flowerpot against the wall near Ms. Yokochi; and eventually left the home. Following that incident, petitioner was arrested but released on bond, the terms and conditions of which prohibited petitioner from having any contact with Ms. Yokochi.

1

From November 18, 2017, through November 26, 2017, Ms. Yokochi was away from home visiting her daughter in Alabama. While in Alabama, Ms. Yokochi received threatening text messages from petitioner and, upon arriving home, found her home had been ransacked and that several more items were missing, including more journals. The State moved to revoke petitioner's bond because he texted Ms. Yokochi in violation of the no contact provision. Petitioner failed to appear for the bond revocation hearing, and a capias warrant was issued for his arrest.

In early February of 2018, petitioner texted Julia Sowers, the mother of his current girlfriend, Harley Earnest, and informed her that he had ransacked and caused damage to Ms. Earnest's home. Upon arriving at Ms. Earnest's home, Ms. Sowers observed that furniture had been flipped over, holes had been punched in the walls, a window was broken, a television was broken, and soup covered the walls and ceiling. Law enforcement was called and was informed that petitioner caused the damage.

On February 8, 2018, petitioner was pulled over in a traffic stop due to an expired inspection sticker. During the traffic stop, petitioner gave the officer a false name and signed the ticket with that false name. Suspecting that something was amiss, the officer later investigated and discovered that petitioner had given him a false name. Petitioner was arrested and incarcerated on a later date.

In September of 2018, petitioner was indicted by a Harrison County Grand Jury on three counts of burglary in violation of West Virginia Code § 61-3-11;[1] three counts of destruction of property in violation of West Virginia Code § 61-3-30(a); and one count of forgery of a public document in violation of West Virginia Code § 61-4-1. By order entered on September 19, 2018, petitioner knowingly and voluntarily waived his right to counsel but was appointed "standby counsel," an attorney at petitioner's disposal with whom he could consult during the proceedings. The circuit court dismissed the three counts of destruction of property pursuant to petitioner's motion to quash in November of 2018.

Petitioner's trial was held in December of 2018. On the day of the trial, petitioner indicated his intent to introduce a journal he had taken from Ms. Yokochi's home, and the State objected due to petitioner's failure to produce the journal during discovery. As such, the circuit court sustained the objection. The State presented the testimony of Ms. Yokochi, who described the October 2017 and November 2017 burglaries of her home. Regarding the October burglary, Ms. Yokochi testified that she arrived home to find her home ransacked and that petitioner came out from hiding and purported to have been in the home all day. Ms. Yokochi stated that petitioner demanded pictures of his son and threw a flowerpot against the wall near her as he left, and then damaged more things on his way out. Ms. Yokochi testified that she believed petitioner entered her home and destroyed her things because he felt that she was trying to keep his child from him because he kept repeating, "You lied to me."

---

[1]At the time of this crime, West Virginia Code § 61-3-11 included distinct subsections for daytime and nighttime burglary. In 2018, the Legislature amended this statute, eliminating any distinction for daytime or nighttime entry. For purposes of this memorandum decision, we will use the 2014 version of the statute, under which the petitioner was indicted.

Regarding the November burglary, Ms. Yokochi testified that, although petitioner did not admit to ransacking her house, she believed he was the culprit as he sent her text messages indicating he knew her whereabouts and that the only way he could have known she was in Alabama was if he saw it written on a calendar in her home. Ms. Yokochi admitted that she did not know whether the burglary occurred during the daytime.

On cross-examination, Ms. Yokochi admitted that petitioner had given her money for his son on several occasions, despite the fact that she asked him not to do so. She testified that there was no agreement as to how the money was to be spent and that on one occasion, she used the money to buy tires. Petitioner then asked Ms. Yokochi whether she had written what she spent the money on in her journal. The State objected to that line of questioning as petitioner failed to disclose the journal prior to trial and the circuit court had previously deemed it inadmissible on that basis. The circuit court sustained the objection.

Lt. McAtee testified that he responded to Ms. Yokochi's home in October of 2017 following a report of a burglary and that Ms. Yokochi surmised that petitioner was responsible for the damage. Lt. McAtee testified that he took pictures of the home, including the items that had been smashed and broken during the incident, before talking to petitioner's parents about petitioner's whereabouts. Lt. McAtee testified that, later that same evening, he received a call from the 9-1-1 call center indicating that Ms. Yokochi reported that petitioner had returned to her home. Lt. McAtee testified that he returned to Ms. Yokochi's home that evening, but petitioner had left by that time. However, Lt. McAtee intercepted petitioner later that evening and observed a baseball bat with fresh scratch marks in the back of petitioner's car. On cross-examination, Lt. McAtee acknowledged that none of the text messages forwarded to him from Ms. Yokochi directly implicated petitioner in the November of 2017 burglary. Lt. McAtee further conceded that he did not know what time of day the alleged burglary occurred but stated that he was "going by . . . the time on the text messages." He admitted that the messages did not indicate that they were sent to Ms. Yokochi from within her home.[2]

The State also presented the testimony of Ms. Sowers; her husband, Daniel Sowers; Ms. Earnest's landlord; the officer that responded to Ms. Earnest's home; and the officer that eventually arrested petitioner. The State then rested.

Petitioner presented the testimony of his sister, Tracey Davis, who testified that on the evening of October 27, 2017, petitioner came to her house to retrieve some money that he stored in her safe. Ms. Davis testified that petitioner informed her that he was taking some money to Ms. Yokochi for his son and that petitioner appeared to be in a good mood. Ms. Davis further testified that petitioner did not have a baseball bat with him when he left her house and started walking towards Ms. Yokochi's house, which was nearby. Ms. Davis stated that a short time later, she heard glass breaking from the direction of Ms. Yokochi's home. Ms. Davis testified that she called petitioner, who told her that he learned Ms. Yokochi was using the money he had given her to pay bills and buy new tires instead of giving it to his son. At that time, Ms. Davis called the police to

---

[2]The State's theory rested upon the idea that petitioner texted Ms. Yokochi at the time of the burglary when he was still inside her home.

3

report petitioner's actions. On cross-examination, Ms. Davis denied reporting to the police that petitioner was carrying a baseball bat when he went to Ms. Yokochi's home. Petitioner also presented the testimony of Ms. Earnest and then rested.

Following deliberations, petitioner was convicted of three counts of burglary and one count of forgery of a public document. Petitioner subsequently filed post-trial motions, which were denied. The circuit court sentenced petitioner to serve consecutive terms of one to ten years in prison for his convictions on two counts of burglary; a term of one to fifteen years, consecutive to the former terms, for his third conviction of burglary; and a term of two to ten years, to run concurrently with the former terms, for his conviction of forgery of a public document. The circuit court also required that petitioner pay restitution to the victims and return certain property. Petitioner appeals the February 28, 2019, sentencing order.

Our general standard of review follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

In his first assignment of error, petitioner argues that the circuit court improperly limited his cross-examination of Ms. Yokochi at trial. Petitioner sought to cross-examine Ms. Yokochi about whether she wrote in her journal that she had spent money given to her by petitioner for his son on her personal expenses. In sustaining the State's objection to defense counsel's questions, the circuit court noted that petitioner failed to disclose the journals until the day of the trial and, accordingly, failed to comply with discovery requests. According to petitioner, his defense strategy was to admit that he destroyed Ms. Yokochi's home but to argue that he lacked the intent to do so prior to entering her home. Petitioner claims that had he been permitted to cross-examine Ms. Yokochi in regard to her journal entries, it would have demonstrated that he did not form the intent to destroy Ms. Yokochi's home until after he entered her home, read the journal, and discovered that she was spending the money on herself rather than on petitioner's son. Petitioner acknowledges that he was able to elicit other testimony indicating his lack of intent, but argues that the "cross[-]examination of Ms. Yokochi regarding the journal entries was the linchpin of his defense." As such, petitioner contends that the circuit court erred in preventing him from presenting a complete defense and, therefore, violated the Confrontation Clause by excluding admissible evidence that was central to his claim of innocence.

We have previously held that "[a]s a general rule, the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. *See generally*, *State v. Koch*, 75 W.Va. 648, 84 S.E. 510 (1915); *State v. Carr*, 65 W.Va. 81, 63 S.E. 766 (1909); *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900)." *State v. Gangwer*, 169 W. Va. 177, 184, 286 S.E.2d 389, 394 (1982). Moreover,

"'[t]he extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in the case of manifest abuse or injustice.' Syl. pt. 4, *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502 (1956)." Syllabus, *State v. Wood,* 167 W.Va. 700, 280 S.E.2d 309 (1981).

Syl. Pt. 12, *State v. McIntosh*, 207 W. Va. 561, 534 S.E.2d 757 (2000). We perceive no manifest abuse or injustice in the circuit court's decision to limit petitioner's cross-examination of Ms. Yokochi with regard to her journal entries. It is undisputed that petitioner failed to timely disclose the journals prior to trial. Due to this failure, the circuit court prohibited petitioner from cross-examining Ms. Yokochi regarding her journals. On direct examination, the State did not introduce any testimony regarding Ms. Yokochi's journal entries or that Ms. Yokochi spent money given to her by petitioner on herself rather than on his child. Moreover, the record shows that petitioner was able to elicit the testimony he sought. During petitioner's lengthy cross-examination of Ms. Yokochi regarding the money that he had given her, Ms. Yokochi testified that she spent some of the money on tires for her car. While petitioner claims that he was prevented from presenting a complete defense, he was still subject to the West Virginia Rules of Evidence and simply claiming that certain testimony is crucial to his defense does not allow him to bypass these rules. Moreover, petitioner admits that he was able to elicit testimony as to his lack of intent through Ms. Davis's testimony that he was happy when he started walking to Ms. Yokochi's home and was not carrying a baseball bat. Ms. Davis further testified that she called petitioner after hearing glass breaking in the direction of Ms. Yokochi's house, at which time he informed her that he learned Ms. Yokochi was spending petitioner's money on her own personal expenses rather than on petitioner's son. On this record, we find that the circuit court did not abuse its discretion in limiting petitioner's cross-examination of Ms. Yokochi at trial.

Petitioner next argues that the State failed to present any evidence that the November burglary occurred during the daytime—a necessary element under the relevant statute in effect at that time of the alleged crime.[3] Petitioner contends that there was no evidence that petitioner entered Ms. Yokochi's home during the daytime. When asked, Ms. Yokochi testified that she did not know what time petitioner burglarized the home. Officer McAtee also testified that he did not know for certain what time petitioner burglarized the home. Despite these admissions, both Ms. Yokochi and Officer McAtee surmised that it occurred at the same time petitioner sent threatening text messages to Ms. Yokochi. Petitioner contends, however, that the messages, which were forwarded to Officer McAtee, have timestamps that show the messages were sent during the nighttime. Petitioner further argues that the State admitted during a pretrial hearing that the texts did not tie petitioner to the crime and, in any event, this "guesswork and speculation was prohibited

---

[3]*See supra* note 1. At the time of his November of 2017 crime, West Virginia Code § 61-3-11(b), the subsection under which petitioner was indicted, provided:

> (b) If any person shall, in the daytime, enter without breaking a dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years.

by the rules of evidence requiring personal knowledge and disallowing relevant evidence that will mislead the jury."

When reviewing a claim of insufficiency of the evidence, this Court reviews the evidence admitted at trial and accepts all inferences from a vantage most favorable to the prosecution.

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). This review takes into account all of the evidence, including circumstantial evidence. "Circumstantial evidence . . . is intrinsically no different from testimonial evidence." *Id.* at 668, 461 S.E.2d at 174 (quoting *Holland v. United States*, 348 U.S. 121, 139-40 (1954)). "Circumstantial evidence and direct evidence inherently possess the same probative value." *Guthrie*, 194 W. Va. at 669, 461 S.E.2d at 175 (quoting *State v. Jenks*, 574 N.E.2d 492, 502 (Ohio 1991)). A criminal defendant challenging the sufficiency of the evidence on appeal has a heavy burden; he or she must prove there is no evidence from which the jury could find guilt beyond a reasonable doubt. *See Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3.

In the instant case, both Ms. Yokochi and Officer McAtee admitted that they were unsure whether petitioner committed the burglary during the daytime. However, both testified that they believed it occurred around the time Ms. Yokochi received the text messages, which was during the day, given the content of the messages. While petitioner argues that the timestamps on the texts introduced into evidence were in military time and, therefore, demonstrated the burglary actually occurred during the night rather than in the daytime as charged, we find this argument to be without merit. Having reviewed the appendix record, we find that the screenshots of the text messages forwarded to Officer McAtee's phone from Ms. Yokochi's phone do not show the time Ms. Yokochi received the messages from petitioner—the time the burglary was surmised to have occurred. Rather, these pictures simply show the time that Officer McAtee took a screenshot of the image on his phone and the time that Ms. Yokochi forwarded the messages to Officer McAtee. These timestamps do not support petitioner's contention that he texted Ms. Yokochi during the nighttime and, as such, there is no merit to petitioner's argument that the pictures of the messages on Officer McAtee's phone somehow disprove the State's argument at trial. Here, the jury heard the circumstantial testimony with regard to what time petitioner committed the burglary, weighed it accordingly, and ultimately determined that sufficient evidence existed to conclude that petitioner burglarized Ms. Yokochi's home in the daytime. In considering petitioner's arguments on appeal, we find that he fails to prove there is no evidence from which the jury could find guilt beyond a reasonable doubt. Thus, petitioner is entitled to no relief in this regard.

For the foregoing reasons, we affirm the circuit court's February 28, 2019, order.

Affirmed.

6

**ISSUED:** August 27, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**CONCURRING AND WRITING SEPARATELY:**

Justice William R. Wooton

Wooton, Justice, concurring:

I concur in the judgment of the Court. I write separately, however, to address a fundamental issue that underlies this case: whether the petitioner, defendant below, had an obligation to provide *any* pretrial discovery to the State, including but not limited to the journal entries he sought to use during cross-examination of a key witness.

Rules 16(b)(1)(A) – (D) of the West Virginia Rules of Criminal Procedure govern the disclosure of information by a criminal defendant, and each of these provisions is triggered only "[i]f the defendant requests disclosures under [parallel provisions] of this rule, upon compliance with such request by the state[.]" We noted this straightforward language in *Marano v. Holland*, 179 W. Va. 156, 366 S.E.2d 117 (1988), holding that

> [u]nder Rule 16(b) of the West Virginia Rules of Criminal Procedure the State's right to request discovery from a defendant is triggered only if the defendant initially seeks discovery, and is confined to the particular area in which the defendant has sought discovery. Additionally, the State must have complied with the defendant's initial discovery request before it can request discovery.

*Id*. at 158-59, 366 S.E.2d at 119, Syl. Pt. 1. In the case of *State v. Doonan*, 220 W. Va. 8, 640 S.E.2d 71 (2006), we made it clear that this rule has teeth, holding that even where the defense has made a request for discovery, "the rule is not automatically reciprocal and applies *only* when the State makes a *specific* request." *Id*. at 14, 640 S.E.2d at 77 (emphasis added). Further, although Rule 32.01 of the West Virginia Trial Court Rules expresses an intent "to encourage complete and open discovery consistent with applicable statutes, case, law, and rules of court at the earliest practicable time[,]" Rule 32.03 clarifies that "[t]he State's right to request discovery from a defendant is triggered *only* if the defendant initially seeks discovery, and is confined to the *particular area* in which the defendant has sought discovery. Additionally, the State must have complied with the defendant's initial request before it can request discovery."  (Emphasis added).

In short, a defendant's duty to provide pretrial discovery cannot be triggered by the mere

7

existence of a prosecutor's "open file policy,"[4] or by the circuit court's entry of a scheduling order. Rather, such duty is triggered only by the defendant's request for discovery from the State, followed first by the State's compliance with said request and then by the State's specific request for discovery, confined to the category or categories of discovery previously sought by the defendant. The purpose of these restrictive provisions in our discovery rules, found in West Virginia Rule of Criminal Procedure 16(b) and West Virginia Trial Court Rule 32.03, is to protect a defendant's "right to present a defense, the right to present the defendant's version of the facts to the jury so it may decide where the truth lies." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

In the instant case, whether the petitioner requested discovery from the State in the first instance is not addressed by either party and cannot be ascertained from the appendix record provided to the Court. If it were clear that no such request was made below, then I would find the existence of plain error in the circuit court's refusal to permit the petitioner to utilize the witness's journals in cross-examination based on his failure to disclose the journals in discovery. The journals were a key component of the petitioner's claim that he did not formulate the intent to commit a felony until after he entered the witness's house, found the journals, and read them, at which point the information contained therein engendered the anger which underlay his destructive rampage. In this regard, section 14 of the West Virginia Constitution guarantees a defendant's right to "*meaningful* cross examination,"[5] and in this case the force of the petitioner's cross-examination of a key witness – on a key defense point – was seriously weakened by the court's exclusion of the evidence.

However, because the record is unclear as to whether the petitioner sought discovery from the State and thus triggered the State's reciprocal discovery rights, and because the parties argued the issue only as an alleged abuse of discretion by the circuit court in making an evidentiary decision, I concur in the Court's reasoning and in its judgment.

---

[4]*Cf. Lawyer Disciplinary Bd. v. Hatcher*, 199 W. Va. 227, 232, 483 S.E.2d 810, 815 (1997), holding that the State's failure to disclose exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), was not excused by virtue of a prosecutor's open file policy.

[5]*State v. Garner*, 232 W. Va. 8, 12, 750 S.E.2d 123, 127 (2013) (per curiam) (emphasis added and citations omitted).