517 S.E.2d 457

**STATE of West Virginia, Appellee,**

v.

**Franklin Junior KENNEDY, Appellant.**

No. 25367.

Supreme Court of Appeals of
West Virginia.

Submitted March 25, 1999.

Decided May 25, 1999.

Darrell V. McGraw, Jr., Esq., Attorney General, Scott E. Johnson, Esq., Senior Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

Steven K. Mancini, Esq., Assistant Public Defender, Welch, West Virginia, Attorney for Appellant.

WORKMAN, Justice:

Appellant Franklin Junior Kennedy appeals his conviction for first degree murder. He challenges his conviction on four grounds: violation of his constitutional right to confront witnesses; prosecutorial misconduct; newly-discovered evidence; and error with regard to instructions the trial court made concerning a rejected plea agreement. After examining each of these assignments, we find no reversible error. Accordingly, we affirm the decision of the lower court.

### I. Factual and Procedural Background

On July 28, 1994, the body of fifteen-year-old Lashonda Viars was discovered in Bartley, West Virginia. Ms. Viars died as a result of a severe head wound. Appellant was arrested that same day and charged with murder. At the trial held on November 20 and 21, 1996, Appellant testified that his wife, Tonya Kennedy,[1] had committed the murder. The evidence presented by the State at trial included a blood sample of the victim taken from the exterior of Appellant's personal vehicle;[2] the autopsy of the victim; testimony placing Appellant with Ms. Viars on the night of the murder; and testimony of investigative law enforcement officers. Following a jury conviction for first degree murder with a recommendation of mercy, Appellant is serving a life sentence with parole eligibility.

Appellant has twice filed motions for a new trial, both of which have been denied by the trial court. On October 15, 1997, Appellant sought a new trial on grounds of newly-discovered evidence. Several months later, he asserted prosecutorial non-disclosure as grounds for a second new trial motion. Through this appeal, Appellant seeks a reversal of his conviction, or alternatively, a new trial.

### II. Constitutional Right to Confront Witness

Appellant asserts that his constitutional right to confront witnesses that testify against him[3] was violated when Dr. Sabet, a pathologist employed by the Office of the Medical Examiner, gave trial testimony concerning the pathology report which was prepared in June 1994 by Dr. Livingston. Dr. Livingston was no longer employed in the Charleston medical examiner's office at the time of trial.[4] Appellant asserts that the State failed to demonstrate its good faith efforts to secure Dr. Livingston's presence at trial in violation of *State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990).

In *James Edward S.*, this Court established a two-prong standard concerning the admission of extrajudicial testimony. Adopting the rulings of the United States Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), we

---

1. Appellant and Tonya Kennedy are now divorced.

2. This vehicle was a white van.

3. *See* U.S. CONST. amend. VI (stating "[i]n all criminal prosecutions, the accused shall ... be confronted with the witnesses against him").

4. He had relocated to Syracuse, New York.

held that "[t]he two central requirements for admission of extrajudicial testimony under the Confrontation Clause contained in the Sixth Amendment to the United States Constitution are: (1) demonstrating the unavailability of the witness to testify; and (2) proving the reliability of the witness's out-of-court statement." Syl. Pt. 2, *James Edward S.*, 184 W.Va. at 410, 400 S.E.2d at 845. To demonstrate a witness's unavailability under *James Edward S.*, a proponent of an extrajudicial statement is required to show evidence establishing a good-faith effort towards securing the witness's presence at trial. *See id.* at 410, 400 S.E.2d at 845, syl. pt. 3. Since the record is devoid of the State's efforts to secure Dr. Livingston's presence at trial, Appellant maintains that the State failed to meet the requirements imposed by *James Edward S.* for admitting an extrajudicial statement of an unavailable witness.

After initially positing that Appellant failed to preserve an objection on Confrontation Clause grounds,[5] the State argues that the law upon which this Court relied in making its rulings in *James Edward S.*[6] was modified on two separate occasions and no longer supports the holding reached in that decision. The United States Supreme Court first modified its *Roberts* decision by stating in *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), that "Roberts cannot be fairly read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable." *Inadi*, 475 U.S. at 394, 106 S.Ct. 1121. The Court unabashedly explained in *Inadi* that the *Roberts* decision was expressly limited to its facts—the admission at trial of the transcript of a probable cause hearing where a witness failed to appear despite being subpoenaed. *Id.* Later, in *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), the United States Supreme Court reemphasized that "Roberts stands for the proposition that the unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding."[7] *White*, 502 U.S. at 354, 112 S.Ct.

5. The State explains that Appellant's only objection regarding the admission of the autopsy report was made on grounds of lack of foundation. As the State correctly notes, the trial court properly overruled Appellant's objection because an autopsy report clearly falls within the hearsay exception of Rule 803(8)(B) of the West Virginia Rules of Evidence as a public record. Based on its public record nature, there was no need for a foundation witness. *See* 3 Stephen A. Saltzburg, Federal Rules of Evidence Manual 1680 (7th ed. 1998). Since the Appellant failed to preserve the Confrontation Clause issue for appellate review, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996), the State contends that this Court should not even address this issue. While we agree with the State, both on the fundamental requirement of preserving issues for review and Appellant's failure to do so with regard to the Confrontation Clause issue, because the law upon which this Court relied in *James Edward S.* has been modified by subsequent rulings of the United States Supreme Court, we choose to address this issue to discuss the effect of those modifications on this State's law.

6. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

7. At first glance, the high Court's ruling requiring proof of unavailability before introducing an extrajudicial statement (only when the origin of such statement was a prior judicial proceeding )

appears to defy logic since judicial proceedings typically involve protections such as cross-examination and oath-taking, both of which would seem to inure favorably to the pivotal issues of reliability and truthfulness. However, as the Supreme Court explained in *Roberts*, "the Confrontation Clause reflects a preference for face-to-face confrontation at trial." 448 U.S. at 63, 100 S.Ct. 2531. As the United States Supreme Court articulated in *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), the Confrontation Clause envisions:

a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Id.* at 242–43, 15 S.Ct. 337. Despite this clear preference for face-to-face accusation, certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "substance of the constitutional protection." *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531 (quoting *Mattox*, 156 U.S. at 244, 15 S.Ct. 337). When presented with the conflicting nature of the Confrontation Clause's preference for in-person testimony and the hearsay rule and its exceptions, the Court in *Roberts*

736. Based on the limitations imposed by the United States Supreme Court to the *Roberts* decision, the State convincingly argues that *James Edward S.* is no longer valid precedent with regard to Appellant's contention regarding unavailability. We agree. Accordingly, we modify our holding in *James Edward S.* to comply with the United States Supreme Court's subsequent pronouncements regarding the application of its decision in *Roberts*, to hold that the unavailability prong of the Confrontation Clause inquiry required by syllabus point one of *James Edward S.* is only invoked when the challenged extrajudicial statements were made in a prior judicial proceeding.[8] *See White*, 502 U.S. at 354, 112 S.Ct. 736. Given the fact that the extrajudicial statement in this case—the autopsy report—does not involve statements given in a prior judicial proceeding, we conclude that the unavailability analysis pertinent to the Confrontation Clause inquiry under *James Edward S.* is not applicable.

■ The State persuasively reasons that even without the high court's modifications to *Roberts*, Appellant's constitutional right to confront witnesses against him was not invoked by virtue of the admission of the au-

topsy report. This is because *Roberts* and *James Edward S.* both made clear that hearsay evidence that falls under a firmly rooted exception to the hearsay rule or alternatively, when such evidence is accompanied by particularized guarantees of trustworthiness, is admissible without any affront to the Confrontation Clause. *See Roberts*, 448 U.S. at 66, 100 S.Ct. 2531 (stating that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception"),[9] *accord James Edward S.*, 184 W.Va. at 410, 400 S.E.2d at 845, syl. pt. 5 (holding that "[r]eliability can usually be inferred where the evidence falls within a firmly rooted hearsay exception").

While Appellant states that he was unable to find a well-rooted hearsay exception which governs the admission of Dr. Livingston's autopsy report, the State argues that the autopsy report falls squarely within the hearsay exception for public records. *See* W.Va. Rules of Evid. 803(8)(B). That rule provides that the "following are not excluded by the hearsay rule, even though the declarant is available as a witness":

> Public records and reports.—Records, reports, statements, or data compilations, in

determined that a statement previously uttered in a judicial setting requires a demonstration of the speaker's unavailability before that statement can be used at trial. In *White*, the Supreme Court stated that "[t]he preference for live testimony in the case of statements like those offered in Roberts is because of the importance of cross-examination, 'the greatest legal engine ever invented for the discovery of the truth.'" 502 U.S. at 356, 112 S.Ct. 736 (quoting *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).

Following *Roberts*, however, the United States Supreme Court explained in *Inadi*, this proof of unavailability is expressly limited to prior judicial testimony. *See* 475 U.S. at 393–94, 106 S.Ct. 1121 (stressing that *Roberts* is a case that "must be read consistently with the question it answered, the authority it cited, and its own facts"). Explaining the preference for live testimony, the Court elucidated:

> [F]ormer testimony often is only a weaker substitute for live testimony. It seldom has independent evidentiary significance of its own, but is intended to replace live testimony. If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justifi-

cation for relying on the weaker version. When two versions of the same evidence are available, longstanding principles of the law of hearsay, applicable as well to Confrontation Clause analysis, favor the better evidence. But if the declarant is unavailable, no "better" version of the evidence exists, and the former testimony may be admitted as a substitute for live testimony on the same point.

*Inadi*, 475 U.S. at 394–95, 106 S.Ct. 1121 (citation omitted).

8. We wish to clarify that our holding in this case has no impact on our prior decision in *In re Anthony Ray Mc.*, 200 W.Va. 312, 489 S.E.2d 289 (1997), in which we discussed the requirement of demonstrating a declarant's unavailability for purposes of introducing evidence under the penal interest exception of Rule 804(b)(3) of the West Virginia Rules of Evidence.

9. In explanation of this holding, the Court remarked, in *Roberts*, upon "the truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values,' *California v. Green*, 399 U.S. [149], 155 [90 S.Ct. 1930, 26 L.Ed.2d 489] [1970], and 'stem from the same roots,' *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)." 448 U.S. at 66, 100 S.Ct. 2531.

any form, of public offices or agencies, setting forth ... matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel. . . .

W.Va.R.Evid. 803(8)(B). The State posits that since the office of the medical examiner is under a legal duty pursuant to the statutory provisions of West Virginia Code §§ 61–12–10 and 61–12–13 (1997) [10] to perform autopsies and record the results, an autopsy report necessarily falls within the ambit of the public records hearsay exception. And, as the United States Supreme Court announced in *Roberts,* where the extrajudicial evidence falls within a recognized hearsay exception, the concerns inherent to the Confrontation Clause are clearly avoided. *See Roberts,* 448 U.S. at 66, 100 S.Ct. 2531; *James Edward S.,* 184 W.Va. at 410, 400 S.E.2d at 845, syl. pt. 5; *accord White,* 502 U.S. at 356–57, 112 S.Ct. 736 (stating "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied" and observing "a statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability") (citing *Idaho v. Wright,* 497 U.S. 805, 820–21, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)); *see also United States v. McHan,* 101 F.3d 1027 (4th Cir.1996) (upholding use of deceased coconspirator's grand jury testimony at trial after finding numerous guarantees of trustworthiness), *cert. denied,* 520 U.S. 1281, 117 S.Ct. 2468, 138 L.Ed.2d 223 (1997).

Numerous courts have recognized the fact that the public records exception is a firmly established exception which satisfies the Confrontation Clause. *See e.g., Felzcerek v. I.N.S.,* 75 F.3d 112, 116 (2d Cir.1996); *U.S. v. Wilkinson,* 804 F.Supp. 263, 268 n. 6 (D.Utah 1992); *State v. Powdrill,* 684 So.2d 350, 358 (La.1996); *People v. Stacy,* 193 Mich.App. 19, 484 N.W.2d 675, 683 (1992). The United States Supreme Court recognized in *Roberts* that, "[p]roperly administered the ... public records exception would seem to be among the safest of the hearsay exceptions." 448 U .S. at 66 n. 8, 100 S.Ct. 2531 (quoting Comment, 30 La. L.Rev. 651, 668 (1970)). In *Montgomery v. Fogg,* 479 F.Supp. 363 (S.D.N.Y.1979), the district court held that "[o]fficial reports ... are a recognized exception to the hearsay rule and have long been deemed admissible, notwithstanding the confrontation clause." *Id.* at 370. With regard to autopsy reports themselves, the court made the following observation in *Fogg:*

> The autopsy reports in this case are official records kept in the regular and usual course of the performance by the medical examiner of this official duties. Their reliability is underscored by the rigid requirements of the New York statute that the examiner who performs the autopsy be a "doctor of medicine and a skilled pathologist and microscopist," and that he record and specify in detail his findings.

*Id.* At least one federal court has determined that, even if autopsy reports do not fall within the public records exception, because they carry "sufficient particularized guarantees of trustworthiness[,]" they satisfy the concerns

---

**10.** West Virginia Code § 61–12–10 addresses the requirement that "[t]he office of medical examinations shall keep full, complete, and properly indexed records of all deaths investigated, containing all relevant information concerning the death, and the autopsy report if such be made." That statute further defines who is permitted to perform autopsies. West Virginia Code § 61–12–13 provides that autopsy records and reports are admissible in evidence:

> Reports of investigations and autopsies, and the records thereof, on file in the office of medical examinations or in the office of any medical examiner, shall be received as evidence in any court or other proceeding, and

copies of records, photographs, laboratory findings and records on file in the office of medical examinations or in the office of any medical examiner, when duly attested by the chief medical examiner or by the medical examiner in whose office the same are filed, shall be received as evidence in any court or other proceeding for any purpose for which the original could be received without any proof of the official character of the person whose name is signed thereto unless objected to by counsel: Provided, however, That statements of witnesses or other persons and conclusions upon extraneous matters are not hereby made admissible.

presented by the Confrontation Clause.[11] *Manocchio v. Moran,* 919 F.2d 770, 784 (1st Cir.1990), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991).

▮ Despite Appellant's protestations, Dr. Sabet was properly permitted by the trial court to give testimony based on the autopsy report prepared by Dr. Livingston. This Court has consistently held that one pathologist can give testimony by referencing information provided in an autopsy report completed by another pathologist. *See State v. Linkous,* 177 W.Va. 621, 625, 355 S.E.2d 410, 414 n. 3 (1987) (citing syl. pt. 5 of *State v. Jackson,* 171 W.Va. 329, 298 S.E.2d 866 (1982) in which we held that "[a]ny physician qualified as an expert may give an opinion about physical and medical cause of injury or death" and that "[t]his opinion may be based in part on an autopsy report"). Accordingly, it is beyond dispute that a medical examiner can testify as to the physical and medical cause of death. *See State v. Triplett,* 187 W.Va. 760, 767, 421 S.E.2d 511, 518 (1992); *State v. Clark,* 171 W.Va. 74, 77–78, 297 S.E.2d 849, 853 (1982). Thus, Dr. Sabet was permitted to testify, based on his review of Dr. Livingston's report, concerning the origin of the wounds on the victim's body.

▮ Appellant maintains that Dr. Sabet was wrongly allowed to testify regarding the instrument used to inflict stab wounds on the victim's body. Dr. Sabet testified that these wounds were consistent with being inflicted by a screwdriver. While this conclusion was not contained in Dr. Livingston's report, we find no problem with Dr. Sabet's testimony regarding the possible use of a screwdriver. This was a conclusion independently reached by Dr. Sabet and he was available for cross-examination at trial on this issue.[12] After a complete review of Appellant's Confrontation Clause assignment, we find no reversible error.

**11.** *See supra* note 9.

**12.** The State makes a valid observation that, rather than a lack of opportunity to confront Dr. Livingston, the crux of Appellant's Confrontation Clause assignment is the absence of Dr. Livingston for purposes of disputing Dr. Sabet's conclusions regarding the use of a screwdriver.

### III. Prosecutorial Misconduct

▮ Appellant asserts that the State violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to provide him with access to the March 6, 1995, statement that Tonya Kennedy gave to the West Virginia State Police.[13] In *Brady,* the United States Supreme Court held that a due process violation occurs when the prosecution suppresses evidence favorable to an accused following a request for information where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution with regard to the suppression. 373 U.S. at 87, 83 S.Ct. 1194. Citing *Brady,* this Court stated in *Lawyer Disciplinary Board v. Hatcher,* 199 W.Va. 227, 483 S.E.2d 810 (1997), that "it is without question that it is a constitutional violation of a defendant's right to a fair trial for a prosecutor to withhold or suppress exculpatory evidence." *Id.* at 232, 483 S.E.2d at 815. As this Court held in syllabus point four of *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982): "a prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." Appellant contends that the second statement was critical to his defense because it supports his testimony that Tonya Kennedy committed the murder by placing her outside their home and in the vicinity of the murder.

On July 30, 1994, Tonya Kennedy gave the McDowell County Sheriff's Department a one-page written statement regarding the whereabouts of herself and Appellant on the night of the murder. In this statement, she said that Appellant left their home on the night of the murder around 9:30 p.m. and returned home between 12:00 a.m. and 1:00 a.m. This statement was made available to

**13.** The State is obligated to disclose evidence in a criminal proceeding pursuant to Rule 16 of the West Virginia Rules of Criminal Procedure, which addresses discovery and inspection, as well as pursuant to Rule 26.2 of the West Virginia Rules of Criminal Procedure, which concerns the production of statements of witnesses.

Appellant prior to trial. On March 6, 1995, Tonya Kennedy gave a second statement regarding the night in question to the State Police.[14] This statement was nineteen pages in length and contrasts to the first statement in that Tonya Kennedy admitted that she and their two and a half-year-old son Shawn were with Appellant on the evening of the murder. Tonya Kennedy says that around 9 or 9:30 p.m., she and Shawn rode with the Appellant in a company truck[15] (not their white van) to the house of Appellant's boss—Ralph Mullens—to tell him about a broken window in the truck. They returned home[16] after Mr. Mullens failed to answer the door. While driving back to their home, Tonya Kennedy stated that she saw the victim talking to someone in a red car at Ashland's across from the Saveway store.

Appellant's current counsel first learned of the second statement on or about October 20, 1997[17] and filed a motion seeking a new trial based on prosecutorial misconduct for failure to make the second statement available for inspection prior to trial.[18] At the hearing on February 26, 1998, concerning the alleged prosecutorial misconduct, Prosecutor Sidney Bell testified that the statement at issue would have been in the file. Appellant's trial attorney, Tracy Lusk, testified that he personally checked the file several times and that his investigator would have checked the file a couple of times also. Neither of those individuals discovered the statement prior to trial. After considering the evidence presented on this issue, the trial court ruled that Appellant had failed to show by clear and convincing evidence that the second statement was not in the prosecutor's file.

The State readily acknowledges that an open file policy in and of itself does not satisfy the requirements of *Brady*. *See State v. Hall*, 174 W.Va. 787, 791, 329 S.E.2d 860, 863 (1985) (holding "[i]t is not enough for the prosecution to simply say that he provided the defense all evidence he chose to put in the file"). A prosecutor's failure to disclose exculpatory evidence cannot be excused by the existence of an open file policy. *See Hatcher*, 199 W.Va. at 232, 483 S.E.2d at 815. The State argues, however, that the principles articulated in *Brady* are not invoked in this case because the second statement made by Mrs. Kennedy was not exculpatory. Only if the evidence is favorable to the defendant does a due process violation arise from the prosecution's suppression of such evidence. As the State explains, the only additional factual evidence supplied in the second statement was that Mrs. Kennedy had ridden with Appellant to his boss's house prior to when Appellant disappeared for several hours. Even a cursory comparison of the two statements reveals that the second statement simply began with events that happened earlier in time than the first one. Appellant acknowledges this very fact by stating in his brief: "Of course, Tonya could have left with Appellant and returned prior to where her first statement commences."

We explained in *Hall* that the key to determining whether evidence is exculpatory is whether such evidence, " 'if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt.' " 174 W.Va. at 790, 329 S.E.2d at 863 (quoting. *Hatfield*, 169 W.Va. at 192, 286 S.E.2d at

14. She had left Appellant and their marital home on a Friday and gave the second statement on the following Monday. Tonya Kennedy claims that Appellant threatened to kill her if she left him and he also said that he would blame the victim's murder on her. Not until after Tonya Kennedy left Appellant, did he allege that she committed the murder.

15. Appellant drove a garbage truck.

16. The statement is unclear as to whether the trip to Mr. Mullens' house took a combined five or six minutes or whether that was the amount of time necessary to drive each way. But, according to the second statement, upon their return from attempting to visit Mr. Mullens, Appellant told his wife to make him something to eat while he went to his brother's for a while. She waited and waited for him to return to eat, but finally at around 10:30 or 11:00 p.m. she laid down with Shawn. When she got up around 11:45 p.m., she noticed that Appellant still had not returned. Within 30 minutes of when she looked at the clock at 11:45 p.m., Appellant arrived at their home.

17. Mr. Mancini began his representation of Appellant in June 1997.

18. This motion was filed on or about December 31, 1997.

404, syl. pt. 4.); *see also United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (defining exculpatory in terms of whether "the omitted evidence creates a reasonable doubt that did not otherwise exist"). The State argues that nothing in Mrs. Kennedy's second statement admits her responsibility for the murder or blames the murder on anyone else. Further, nothing in the second statement provides Appellant with an alibi. At best, the second statement illuminates the fact that Appellant made two trips on the night of the murder; the first one being a brief trip to his boss's house on which he was accompanied by his wife. Critically, the second trip, according to Mrs. Kennedy's second statement, involved Appellant leaving the marital home around 9:30 p.m. and returning around 12:15 a.m. This representation is entirely consistent with Mrs. Kennedy's first statement wherein she had Appellant returning home between 12 and 1 a.m. We see nothing in the second statement that casts any doubt, let alone a reasonable doubt, as to Appellant's guilt. *See also State v. Ward,* 188 W.Va. 380, 391–92, 424 S.E.2d 725, 736–37 (1991) (finding that prosecution's nondisclosure of witness and statement did not violate defendant's due process rights where allegedly exculpatory evidence failed to contradict evidence used to convict defendant and evidence was of questionable probative value).

While we do not resolve this issue of prosecutorial misconduct on the same grounds as the circuit court,[19] we reach the same conclusion. *See* Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965) (recognizing principle that lower court's decision can be affirmed "when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment"). After reviewing the contents of the second statement made by Mrs. Kennedy, we find nothing in that statement that would "creat[e] a reasonable doubt as to his [Appellant's] guilt" and therefore, we agree with the State that the allegedly suppressed statement was not exculpatory in nature. *Hatfield,* 169 W.Va. at 192,

286 S.E.2d at 404, syl. pt. 4. Since the second statement does not exculpate Appellant, *Brady* and its progeny are not invoked. Accordingly, as to Appellant's assignment of prosecutorial misconduct, we find no reversible error.

IV. Newly Discovered Evidence

▇▇▇ Appellant moved for a new trial pursuant to Rule 33 of the West Virginia Rules of Criminal Procedure on the grounds of newly discovered evidence. To satisfy the high standard of newly-discovered evidence, a defendant must meet the following five-prong test:

" 'a new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus, *State v. Frazier,* 162 W.Va. [9]35, 253 S.E.2d 534 (1979), *quoting,* Syl. pt. 1, *Halstead v. Horton,* 38 W.Va. 727, 18 S.E. 953 (1894)." Syl. Pt. 1, *State v. King,* 173 W.Va. 164, 313 S.E.2d 440 (1984).

Syl. Pt. 1, *State v. O'Donnell,* 189 W.Va. 628, 433 S.E.2d 566 (1993). Acknowledging that newly discovered evidence motions are left up to the discretion of the trial judge, Appellant argues that the trial judge committed an abuse of that discretion in failing to grant his motion. *See State v. Crouch,* 191 W.Va. 272,

---

19. The trial court ruled because the State had an open file policy and because Appellant had not

shown that Mrs. Kennedy's statement was not in the file, no *Brady* violation had occurred.

275, 445 S.E.2d 213, 216 (1994) (holding that question of whether new trial should be granted is within trial court's discretion and is reviewable only when court abuses its discretion).

In support of his newly-discovered evidence motion, Appellant offered the testimony of three witnesses at the October 15, 1997, proceeding. Sheila Kay Kennedy, Appellant's sister-in-law, testified that Tonya Kennedy had confessed to her that she committed the murder. According to Sheila Kennedy, Tonya Kennedy admitted to killing Ms. Viars and even showed Sheila Kennedy jewelry that had allegedly belonged to the victim. This statement differed significantly from the first statement Sheila Kennedy gave to the police shortly after the murder in which she claimed that Appellant had told her how the murder was committed and that Appellant admitted to being the murderer. At trial, however, Sheila Kennedy recanted her statement, which implicated Appellant, and claimed instead that she had no information regarding the murder.

A second individual whose testimony Appellant offered in support of his newly-discovered evidence motion was Bruce David Church. Mr. Church, who had not testified at trial,[20] testified at the October 1997 hearing that additional people had been with Appellant when he was spotted by Danny O'Quinn on the night of the murder.[21] Mr. O'Quinn had testified at trial that no other women were at the location where he spotted Appellant. Mr. Church testified that the individuals he saw at the scene of the crime

may have included Appellant's brother, the victim, and possibly another woman.

The third individual who testified at the October 1997 hearing was James Mullens. Mr. Mullens testified that he had been involved in a romantic relationship with Tonya Kennedy, both before and after her marriage to Appellant. Mr. Mullens also stated that Tonya had confessed to stabbing the victim with a screwdriver on the night of the murder.[22]

 After hearing this evidence, the trial court denied Appellant's motion on the following grounds. As to Sheila Kennedy, the lower court determined that her evidence regarding the Tonya Kennedy confession was merely cumulative in that this theory as to who had killed the victim had already been presented by Appellant at trial. While the lower court clearly misapplied the concept of cumulative evidence,[23] we find that the "new" evidence testified to by Sheila Kennedy would not have been admissible at a prospective second trial. Newly-discovered evidence, like any other proffered evidence, "must be admissible if a new trial was granted." *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 325, 465 S.E.2d 416, 427 n. 18 (1995). Since the "new" evidence testified to by Sheila Kennedy was hearsay, which would likely be proffered as a statement against interest, corroborative evidence demonstrating the trustworthiness of the statement would be required before such evidence could be admitted at trial. *See* W.Va.R.Evid.

---

20. Appellant's investigator, a retired sheriff's deputy, testified that, despite intensive efforts, he had been unable to locate Mr. Church before trial.

21. Mr. Church was a passenger in the vehicle driven by Mr. O'Quinn.

22. Contrary to Appellant's representations regarding Mr. Mullens' testimony, Mr. Mullens did not testify at the October 15, 1997, hearing that Tonya Kennedy told him that she had killed Lashonda Viars. His testimony included the fact that Tonya Kennedy got into a fight with the victim while inside a van; that Tonya Kennedy stabbed at the victim; and that Tonya Kennedy stated that Appellant was not guilty of the victim's murder.

23. This Court has previously defined the concept of cumulative evidence in *O'Donnell*:

> To be cumulative, newly-discovered evidence must not only tend to prove facts which were in evidence at the trial, but must be of the same kind of evidence as that produced at the trial to prove these facts. If it is of a different kind, though upon the same issue, or of the same kind on a different issue, the new evidence is not cumulative.

189 W.Va. at 629, 433 S.E.2d at 567, syl. pt. 2. Clearly, had the testimony of Sheila Kennedy been admissible under the rules of evidence, it would not have been cumulative.

804(b)(3) (discussing foundational requirements for admission of statement against interest).[24] No such corroborative evidence was put into evidence. Moreover, given the fact that Sheila Kennedy had previously admitted to lying regarding her knowledge as to the murder at trial and then testified at trial under oath that she had no information about the case, her statement regarding Tonya Kennedy's alleged confession clearly lacked sufficient indicia of trustworthiness to be admissible evidence. *See also State v. Beard,* 194 W.Va. 740, 748–49, 461 S.E.2d 486, 494–95 (1995) (discussing declarant's habit of admitting and denying complicity for murders and concluding that testimony lacked credibility and was not admissible under W.Va. Rule of Evidence 804(b)(3) for lack of trustworthiness).

 With regard to Mr. Church, the trial court concluded that Appellant's sole reason for offering his testimony was to impeach or discredit the trial testimony of Danny O'Quinn. In *State v. Helmick,* 201 W.Va. 163, 495 S.E.2d 262 (1997), we held that a new trial will generally be refused when the sole purpose of the new evidence is to discredit or impeach an oppositional witness. *Id.* at 165, 495 S.E.2d at 264, syl. pt. 1; *but see State v. Stewart,* 161 W.Va. 127, 239 S.E.2d 777 (1977) (holding that in certain instances impeachment evidence which supports alibi defense may be sufficient to warrant new trial provided all other elements of newly-discovered evidence test are met). Mr. Church's testimony clearly falls within the prohibitions of *Helmick* as its only purpose was to contradict Mr. O'Quinn's trial testimony. Moreover, as the State argues, the "new" evidence offered by Mr. Church cannot meet the heavy burden of producing an acquittal at a second trial. Mr. Church's testimony was offered solely to dispute Mr. O'Quinn's testimony regarding whether there were other people, specifically other women, who were seen together on the night of the murder in the vicinity of Appellant's white van. In addition to the above, the trial court

found significant the fact that "Church qualified his testimony several times by stating that he has a poor memory."

 The trial court properly recognized credibility problems with the "new" evidence proffered by James Mullens. Mr. Mullens admitted that he was intoxicated when Tonya Kennedy allegedly confessed that she had committed the crime. He denied ever telling anyone else about the alleged confession until Appellant's attorney contacted him just before the hearing at the Southern Regional Jail, where he was an inmate. Like the so-called admission to Sheila Kennedy, any admission to James Mullens would also be subject to the requirement that such statement could only be admitted into evidence provided there are "corroborating circumstances clearly indicating the trustworthiness of the statement." W.Va. Rule Evid. 804(b)(3). Just as Appellant failed to offer corroborative evidence that would support Sheila Kennedy's testimony, Appellant similarly failed to present any evidence that tended to show the trustworthiness of Mr. Mullen's testimony.

After reviewing the evidence that Appellant offered in support of his motion for a new trial, we find no error in the trial court's conclusion that a new trial was not warranted on the grounds of newly discovered evidence. While we disagree with the trial court's application of the doctrine of cumulative evidence, we agree with its conclusion that Mr. Church's evidence was not admissible as it was offered solely to impeach another witness's testimony. As to the proffered testimony of Sheila Kennedy and James Mullens, we conclude that such evidence would not have been admissible given the lack of corroborative evidence necessary to establish the trustworthiness of their statements. *See* W.Va.R.Evid. 804(b)(3).

### V. Plea Agreement Discussion

 Appellant alleges error with regard to the trial court's comments to him concern-

---

**24.** Tonya Kennedy qualified as an unavailable witness as she invoked her Fifth Amendment

privilege at the October 15, 1997, hearing. *See* W.Va.R.Evid. 804(a).

ing his rejection of a plea agreement tendered by the State. After the trial court learned on the eve of trial that Appellant had rejected the State's offer to allow him to plead guilty to second-degree murder, the court requested a conference with Appellant. During the discussion that ensued, the trial court proceeded to explain to Appellant the different sentencing possibilities for first and second degree murder convictions.[25] After explaining the various sentencing possibilities, the lower court instructed Appellant to reconfer with his counsel. After this conference with his attorney, Appellant again rejected the plea agreement.

We find absolutely no merit in this assignment. As the State accurately observes, Appellant was represented by counsel during the plea negotiations and can make an ineffective assistance of counsel claim if he feels that he was not properly advised regarding the law as to the options presented to him. More importantly, however, as the State emphasizes is the fact that Appellant never once claims that he was misled by any of the Court's statements in making his decision to reject the plea agreement. We conclude that the lower court committed no reversible error with regard to the sentencing colloquy.

Based on the foregoing, we find no reversible error. Accordingly, the decision of the Circuit Court of McDowell County is hereby affirmed.

Affirmed.

---

**25.** During the court's sentencing discussion, the trial court opined:

The penalty under the new statute for second-degree murder is up to 40 years in prison. Ten to 40. Ten years to forty years. In other words, the Court can fix a determinate sentence, a fixed number of years between ten and forty and the Court does that. No one else. Do you understand?

Appellant complains that the trial court erred in using the term "can" instead of must with regard to fixing a determinate sentence and that the use of such incorrect term confused him.